José Sosa-Fernández, Plaintiff and Appellant, *v.* José Sosa-Oliva, Defendant and Appellee.

No. 3885. Argued June 17, 1926.—Decided July 31, 1926.

*Juan B. Soto* for the appellant. *Jaime Sifre* and *Horacio Franceschi* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

On March 28, 1917, José Sosa Oliva and José Sosa Fernández signed before a notary a contract which contained, among others, the following agreement:

"Seventh: That both parties wishing to liquidate the account of the maternal inheritance by the second party, they do so as follows: First.—José Sosa Fernández acknowledges and accepts the account covering the expenses for his education submitted by his father, José Sosa Oliva, and asserts that he knows of his own personal knowledge the correctness of every one of its items. Second.—Both parties agree that the total amount of $3,329.50 aggregating the maternal inheritance of the second party is included in the amount set forth as the aggregate of the account referred to in paragraph six of this instrument. Therefore, José Sosa Fernández hereby acknowledges receipt of the amount of his inheritance from his mother and gives to his father, José Sosa Oliva, a full and complete acquittance and discharge, relieving him of all responsibility and thanking him for his paternal zeal and diligence. Third.—José Sosa Oliva agrees that the difference between the total amount set forth in the said account and the maternal inheritance, or $8,253.01, represents a donation by him to his son, José Sosa Fernández, thus fulfilling a father's duty of giving his son the best possible education in accordance with the wealth of the giver."

On February 18, 1924, José Sosa Fernández, the son, brought an action against José Sosa Oliva, his father, praying the court to adjudge the contract null and void and to order the division of his maternal inheritance by awarding to the plaintiff the portion to which he was entitled, because his consent to the contract had been secured by error and fraud.

The defendant pleaded the statute of limitation and denied error and fraud. The case went to trial and the court rendered judgment for the defendant for the reason that the action was not brought within the period of four years specified by the law. From that judgment the plaintiff interposed the present appeal.

In a way the appellant admits that if this had been an

ordinary action of nullity, the judgment would have been faultless, but he contends that in this case the contract is not merely voidable, but void, in which case the four-year limitation does not apply.

The appellee urges that the appellant now undertakes to change the theory of his complaint. Perhaps he is right, for the complaint shows that it is based not on the lack of consideration, but on error and fraud. But as there may be found also in the record elements to sustain the theory that the invalidity of the contract was considered from the beginning, we prefer to go no further into this question and to discuss the case from the standpoint argued by the appellant, because even then the judgment is correct.

We copy the following from his brief:

"The court erred in not holding void the contract attempted to be set forth in the deed inserted in the complaint, for the said contract lacks actual consideration and, consequently, can not be taken as valid according to section 1228 of the Civil Code of Porto Rico, which reads as follows:

" 'There is no contract unless the following requisites exist:

" '1. The consent of the contracting parties.

" '2. A definite object which may be the subject of the contract.

" '3. The cause for the obligation which may be established.'

"What is the consideration pointed out in the said contract for the assignor, that is, the appellant? The expenses which, according to said deed, the defendant incurred by reason of the education of the plaintiff. Can those expenses constitute an actual consideration? If they do constitute it, the contract existed, although for some reason it may be null; but if they do not constitute such a consideration, then the contract did not exist, inasmuch as it lacked one of the elements which, according to the inserted section of the Civil Code, is indispensable for its existence.

"We understand that these expenses do not constitute a consideration. The consideration by virtue of which the plaintiff assigned to the defendant his rights and actions to the inheritance from his deceased mother is not actual, and therefore its existence can not be taken as such. To this conclusion we are led by the following facts:

" (a) As appears from the evidence, the educational expenses began to be incurred when the plaintiff was 9 years old, and continued

up to the time when the plaintiff was 18 years old; in other words, such expenses were incurred during the minority of the plaintiff.

"(b) The evidence in the case shows that the said expenses were not incurred to defray professional tuition, the studies made by the plaintiff being merely those embraced by what is called primary ed-·ucation and approximately the fourth year of high school.

"(c) The expenses of such education, according to sections 212 and 213 of the Civil Code, are included in the support which, according to said sections, the father is compelled to provide for his son while he is under age. Section 212 reads:

"'Support is understood to be all that is indispensable for maintenance, housing, clothing and medical attention, according to the social position of the family.

"'Support also includes the education and instruction of the person supported when he is a minor.'

"(d) If the father was obliged to provide support, such support can not be the consideration in a contract wherein the son waives in behalf of his father, in consideration of such support, his hereditary rights to the inheritance of his pre-deceased parent.

"The father did not show at the trial that the expenses of the instruction and education of his son had been incurred after his son had reached the age of 21 years. On the contrary, from the evidence it appears that when such expenses began to be incurred the plaintiff was but a child of early age. (See testimony of the plaintiff.) And these being the facts, there only remains to be considered the law in respect to the following point:

"Can an act the performance of which is carried out as a duty imposed by the law be taken as the consideration for a contract?"

We are entirely in conformity with the appellant's theory that the defendant father had no right to require of the plaintiff son that he should respond for a part of the expenses of his education. The father was under obligation to support his son, according to law. He could have left him in Porto Rico without education, as many other fathers do, thus failing to comply with his duty to its full extent, taking into consideration his wealth, which, if not great, was at least sufficient. But the father in this case elected to do his duty fully. He acted voluntarily and could claim from no one. The only reward he could expect was that coming from

the satisfaction of the feeling that he had done his full duty. But if the son, on becoming of age, recognizing the efforts of his father and coming into the inheritance from his mother, in response to the call of conscience, or acting under a feeling of liberality, voluntarily offers to defray a part of the expenses of his education and thus acknowledges it and agrees to it in a written contract, can it be maintained that the contract is void for lack of consideration? By no means whatever, in our opinion. If such a narrow theory could be maintained a large number of contracts wherein conscience acts **freely, where the noblest obligations** are assumed, could be annulled on a change taking place in the disposition or spirit of probity of the persons entering into them.

It may be pertinent to transcribe here some paragraphs from Scaevola's comments on article 1274 of the Spanish Civil Code, which corresponds to section 1241 of our Civil Code, as follows:

"In order to get at the true judicial meaning of consideration we must first realize that in the inception of a contract three elements are combined: Matter or object, mind where consideration originates, and will which gives consent. Therefore there are elements personal and real, the former referring always to the person in their *mental finality* either immediate or remote, in their *volitive determination*, in so far as the consent and potentially the whole contract to be executed reside, and in their *conscious activity or omission*, obligations to give, do or not do, conditioned by their enforceable quality by virtue of the *consensus* and in the last resort by the pressure of the social power. The latter, that is to say, the real elements, are perfectly identified with everything constituting individual property, things or services.

"In which of these two elements is to be found the consideration? In our opinion in the personal elements. Section 1274 of the Civil Code, which is certainly a reliable text because its orthodoxy is based on the classicism of French law, places the consideration of a contract in the service, promise, benefit or mere liberality. Every service means personal activity; promise is an act of the will, an essential element in preparatory agreements; benefit, apart from the

pesonal effort which the same implies, is an enjoyment or satisfaction the measure of which is to be found in the con'sciousness of the recipient and therefore belongs to the subjective or personal side; and lastly mere generosity, as a spontaneous and gratuitous act, also belongs to the realm of liberty and intention likewise personal and psychic.

"It appears from the text of section 1274 of the Civil Code that consideration is a personal element in contracts. Now then, of the three subjective elements, if it is necessary to eliminate that of the volitive determination because it is fully included in the freedom to consent, and the element of activity is required by the object of the obligation which, as we know, is translated into an act, in a service properly speaking, we have only left as a nucleus for consideration the element of finality. And that is where we certainly find the consideration of a contract, notwithstanding the opposition of those who brought confusion into this theory so simple and understandable in itself, because they make no distinction between metaphysical and plastic subjects.

"The nerve is not the nervous current, nor is the electric fluid substantially light, heat or force, but simply fluid. Likewise the finality of a contract is not service, although the latter is potentially included in the former. An irrefutable proof of the fact that the consideration of contracts resides in the proximate intention of the parties is to be found in contracts of beneficence.

"But as the proximate intention of the parties must be congruent and in harmony with the true finality of the contract in its nature as a juridical and social institution, and in no way a subversion of its substance, it follows that the idea sprang up (not in the realm of metaphysics but in the domain of the plastic side of the law in its live and enforceable forms) of the correlation between finality and service, making finality subservient to service, because the former is a concept and the latter a fact, and because the intentional element is always reached in the practice of law by induction from proven facts.

"The problem of the proof of the consideration arose when it was sought to evade a contract on the ground of the absence of consideration or the existence of an illicit one, and then after clearly seeing that intentions are proved by facts it was considered and decided in the established law to transfer the consideration from the

mind to the service in contracts where, on account of opposing interests (bilateral contracts), the converging of these finalities in the consent demonstrated the existence of the consideration on both sides.

"In this respect Serafini very wisely says that if in Roman law, even in informal contracts, the creditor had to prove the will as well as the existence of consideration, in modern law *if the will is proved by the creditor the consideration is presumed,* and it is the debtor who has to prove its non-existence.

"As a confirmation of this assertion we find section 1277 of the Civil Code a necessary complement to section 1274. According to said section, even though the consideration be not stated in a contract *it is presumed to exist and that it is licit unless the debtor proves otherwise.*" 20 Scaevola, Commentaries on the Civil Code, pages 750–753.

See also 13 C. J. 342.

During his testimony at the trial the plaintiff himself stated that when he returned from the United States he found his father living in such conditions that he thought he was poverty stricken, and he took pity on him and consented to the contract. Afterwards he said that his father was prosperous.

Let us suppose that his poverty was true. If a son in respect to his father, or any other creditor in respect to a debtor, consents to condone the debt, taking into consideration the bad financial condition and certain prior behavior of the father or of the debtor in respect to the creditor, behavior which, though what should have been, it is admitted was noble and good, and carried the fulfilment of a father's duty to the limit, could it be maintained that in this case there was no consideration within a legal system as ours which recognizes the mere liberality of a benefactor as consideration in charity contracts and which prescribes that, although the consideration be not stated in the contract, it is presumed to exist and to be lawful until the contrary is proved by the debtor? The reply to the question must necessarily be negative.

And if this poverty condition of the father was feigned,.

we would then be confronted with a case of a questionable contract but not a case of a void contract and consequently a proper case for the application of prescription. The same reasoning applies to the other causes of nullity averred in the complaint.

Consequently the judgment appealed from should be affirmed.

Mr. Justice Hutchison took no part in the decision of this case.